UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERICO LOPEZ ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8977** |
| | **CONS. W/ 19-9928** |
| **MCDERMOTT, INC ET AL** | **SECTION "L" (5)** |
| **THIS ORDER RELATES TO:** *17-8977* | |

## ORDER & REASONS

Pending before the Court is Defendant Exxon Mobil Corporation's Motion for Summary Judgment filed in the *Lopez* matter. R. Doc. 449. The *Lopez* Plaintiffs oppose the motion. R. Doc. 505. Defendant has filed a reply. R. Doc. 509-2. Oral argument was held on Wednesday, June 24, 2020 at 10:00 a.m. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

**I.   BACKGROUND**

In June 2017, Plaintiff Federico Lopez brought this lawsuit for asbestos exposure in Orleans Parish Civil District Court. R. Doc. 1-2 at 2. On September 13, 2017, the case was removed to this Court. Mr. Lopez died on November 9, 2017 after filing this claim. R. Doc. 61 at 1. Thereafter, his surviving spouse, Maricela Lopez, and surviving child, Federico Lopez III, maintained the case on Mr. Lopez's behalf and asserted a wrongful death claim. R. Doc. 61 at 1. The *Lopez* Plaintiffs filed a Sixth Amended Petition for Damages on September 24, 2018. R. Doc. 360.

1

In the operative complaint, Plaintiffs allege that Mr. Lopez was exposed to asbestos-containing products while employed as a welder/pipefitter at Kellog Brown & Root between 1973 and 1986. R. Doc. 360 at 2. Plaintiffs contend these exposures caused him to contract malignant mesothelioma later in life. R. Doc. 360 at 2. Plaintiffs brought suit against a number of defendants who manufactured asbestos containing products or owned the premises upon which the asbestos-containing products were used. R. Doc. 360 at 3. Plaintiffs' claims against these manufacturers and premises owners sound in negligence and strict liability. One of these defendants was Exxon Mobil, the owner of fixed offshore platforms on which Mr. Lopez worked.

On November 8, 2018, Plaintiffs Jessica and Alfred Soliz filed suit in the 19th Judicial Court for the Parish of East Baton Rouge asserting strict liability and negligence claims on behalf of Mr. Lopez, alleging they were also Mr. Lopez's children. No. 19-9928, R. Doc. 1-2. This case was transferred to this Court on March 8, 2019, R. Doc. 1, and consolidated with the *Lopez* matter on June 10, 2019, R. Doc. 21.

## II.  PRESENT MOTION

Defendant Exxon Mobil Corporation ("Exxon") originally filed a motion for summary judgment in both the *Lopez* and *Soliz* matters, R. Doc. 449, but was dismissed in the *Soliz* action on June 10, 2020. Accordingly, the motion is only pending with respect to the *Lopez* Plaintiffs.

Exxon seeks summary judgment for four reasons: (1) Plaintiffs' expert concluded that Mr. Lopez's work on the Exxon platforms was not a substantial contributing cause to his mesothelioma; (2) Exxon did not owe a duty to protect Mr. Lopez from the inherent risks of his employment; (3) Exxon, as a premises owner, cannot be strictly liable for an alleged defect that is temporary in nature; and (4) Mr. Lopez is not entitled to punitive damages because there is no evidence that Plaintiff was exposed to asbestos from Exxon's premises when punitive damages

were recoverable, Exxon did not participate in the storage, handling, or transportation of hazardous substances, and Exxon's behavior was not wanton or reckless.

The *Lopez* Plaintiffs oppose the motion. R. Doc. 505. They argue that (1) they have provided sufficient evidence that Mr. Lopez's work on Exxon platforms substantially caused his mesothelioma; (2) Exxon owed Mr. Lopez a duty under direct and vicarious liability theories; and (3) Exxon is strictly liable for Mr. Lopez's mesothelioma as a premises owner. Plaintiffs do not address Exxon's arguments regarding punitive damages.

Exxon has filed a reply, R. Doc. 509-2, stressing that there is no evidence that Mr. Lopez ever refurbished Exxon platforms and pointing out that despite Plaintiffs' assertion that Mr. Lopez was exposed to asbestos fibers through the use of asbestos blankets, Mr. Lopez's deposition testimony is devoid of any reference to such blankets. R. Doc. 509-2 at 2. Exxon reaffirms its position that (1) Plaintiffs' negligence claims must fail because it did not owe Mr. Lopez a duty, and (2) Plaintiffs' strict liability claims must fail because the injurious asbestos was not in Exxon's care, custody or control. R. Doc. 509-2 at 2.

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for

summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B. Discussion

Defendants seek summary judgment of Plaintiffs' negligence and strict liability claims, in addition to arguing that punitive damages are not available in the instant matter. The Court considers each issue in turn.

#### 1. Negligence

A plaintiff must prove five elements to establish that liability exists under the facts of a particular case to sustain a negligence claim: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the

4

appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages." *S.J. v. Lafayette Parish Sch. Bd.*, 2009-2195 (La. 7/6/10), 41 So.3d 1119, 1125 (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 6 (La. 4/3/02), 816 So.2d 270, 275–76). Exxon argues summary judgment is warranted because no genuine issue of material fact exists with respect to the causation and duty prongs of Plaintiffs' negligence claims. The Court will discuss each in turn.

    a. **Causation**

To prevail in an asbestos case under Louisiana law, a plaintiff "must prove by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant; and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma." *Romano v. Metro Life Ins. Co.*, 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So.3d 176, 182; *see also Palermo v. Port of New Orleans*, 2004-1804 (La. App. 4 Cir. 3/15/06), 933 So. 2d 168, 181 ("To determine whether a particular source of exposure to asbestos was a cause-in-fact of a plaintiff's asbestos-related disease, Louisiana courts employ a "substantial factor" test. Simply stated, the particular exposure must be a substantial contributing factor to the plaintiff's disease."). "When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature." *Vodanovich v. A.P. Green Industries, Inc.*, 03-1079, pp. 3-4 (La. App. 4 Cir. 3/3/04), 869 So.2d 930, 932–33 (citation omitted). "Whether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973). Accordingly, in this

case, the *Lopez* Plaintiffs bear the burden of proving that Mr. Lopez was exposed to asbestos attributable to his work with Exxon and that this exposure was a substantial factor in the development of his disease.

It is undisputed that Mr. Lopez was employed by Brown and Root ("Brown and Root") between 1973 and 1985 as a welder and pipefitter responsible for fabricating and refurbishing offshore drilling platforms. R. Docs. 449-2 at 3; 505 at 3. Although much of his work occurred in Brown and Root's Houston marine yard, Mr. Lopez traveled offshore to set platforms in place about every six weeks beginning in 1974. R. Doc. 505 at 3. Although Mr. Lopez recalled working on twelve Exxon platforms between 1975 and the early 1980s, Lopez Dep. 36:12–37:14, August 17, 2017 [hereinafter Lopez Dep. Vol. II], he could not provide any specific details about eleven of these jobs nor could he identify where those platforms were located, *id*. 42:25–3:15, 46:14–21. Additionally, it is disputed whether Mr. Lopez ever refurbished old Exxon platforms in the marine yard. R. Doc. 449-2 at 3; 509-2 at 1.

Plaintiffs argue that while working on Exxon platforms, Mr. Lopez was exposed to asbestos dust created by the installation of insulation, the manipulation and repair of gaskets, and the use of asbestos-containing welding blankets. In contrast, Exxon argues there is no evidence that Mr. Lopez was exposed to any asbestos fibers while working on an Exxon platform because asbestos-insulation of the type Mr. Lopez described was banned by the EPA in 1975 and because any gasket work Mr. Lopez would have performed on newly constructed Exxon platforms did not involve the fabrication, refurbishment, or manipulation of asbestos-containing gaskets in any fashion that would release asbestos fibers into the air. R. Doc. 449-2 at 7, 9, 13.

Exxon has certainly made a strong case for why Mr. Lopez could not have been exposed to any asbestos fibers while working on Exxon platforms in any manner Plaintiffs propose.

6

Notably, Mr. Lopez testified that all his jobs on Exxon platforms occurred between 1975 and 1982 and involved the offshore installation of newly constructed platforms. Lopez Dep. 37:15-19, Aug. 16, 2017 [hereinafter Lopez Dep. Vol. I]. Plaintiffs' own industrial hygiene expert testified that he was unaware of any manufacturers that produced the type of asbestos-containing pre-molded insulation Mr. Lopez described using on the Exxon platforms after 1973, and that the EPA banned the material entirely in 1975. Ewing Dep. 68:10-19, Jan. 28, 2020. With respect to exposure from gasket fabrication and maintenance, Mr. Lopez testified that on newly constructed platforms, he was not required to chip, grind, cut, tear, or otherwise manipulate the gaskets, and Mr. Ewing confirmed that asbestos dust would not be released from the installation of gaskets without evidence of these activities. Lopez Dep. Vol. I, 59:3-17; Ewing Dep. 79:4 – 82:2. Mr. Lopez was silent about the use of asbestos blankets.

      Nevertheless, Plaintiffs have succeeded in raising a genuine issue of material fact with respect to exposure. As for exposure from insulation, Mr. Lopez and his colleagues, Mr. Buchanan and Mr. Lewis, all testified about the use of "asbestos half-moon shell[]" pipe insulation, the installation of which caused them to breath insulation dust. Lopez Dep. Vol I 97:2-10, 98:1:4. Mr. Lewis described the conditions caused by the removal of the insulation as "smoky" and "dusty," with "debris . . . flying everywhere." Lopez Dep. Vol. II 97:12-24. Mr. Lopez specifically recalled the removal and replacement of half-moon shells occurring on Exxon platforms. *Id*. at 101:14-16, 102:5-7. Mr. Buchanan echoed this testimony, explaining that insulation was installed on new Exxon platforms and describing the insulation as "like chalk" and "preformed." Buchanan Dep. 47:12-21, 51:16-17, 53:12-14, Sep. 9, 2019. Mr. Buchanan testified that the installation of the material involved cutting it with a hand saw and scraping it down with a utility knife, which created dusty conditions. *Id*. at 48:2-9. Critically, Mr. Buchanan testified the insulation used at Brown and

7

Root looked the same from 1967 to at least 1977, and that the pipe insulation work occurred offshore as well as in the marine yard. *Id*. at 48:16-49:7, 58:17-19. Another co-worker, Mr. Lewis, recalled working with Mr. Lopez in the yard and offshore on Exxon platforms, where they were responsible for installing the pipe insulation. Lewis Dep. 13:05-07, 13:13-14:13, 25:12-26:23, Oct. 23, 2019. Like Mr. Buchanan, he testified that the insulation looked the same from 1968 to 1980. *Id*. at 35:03–36:10. Accordingly, this evidence could be construed by a jury as indicating that asbestos-containing materials continued to be used on Exxon platforms in a manner that would release asbestos fibers into the air despite the EPA's ban in 1975.

The evidence regarding exposure from gaskets and asbestos blankets is much slimmer. Notably, Mr. Lopez himself did not testify about manipulating the gaskets in any way that could release asbestos fibers. However, Mr. Buchanan testified that he and Mr. Lopez fabricated and installed new gaskets while offshore using a sheet gasket material that had the word "asbestos" written on it, and that the material was used at least through the 1980s. Lopez Dep. Vol I 59:3-21; Buchanan Dep. 64:23-66:21. Additionally, although Mr. Lopez's deposition was silent about the use of asbestos blankets, both Mr. Buchanan and Mr. Lewis testified that they were used "regardless of who owned the platform" and noted that the blankets released asbestos dust any time they were moved or altered. Buchanan Dep. 76:12:21; Lewis Dep. 43:3–44:5. Mr. Lewis recalled seeing Mr. Lopez using such a blanket, Lewis Dep. 44:11-13, although Mr. Buchanan could not confirm the same, Buchanan Dep. 269:22–270:2. Although this circumstantial evidence may be insufficient to establish liability at trial, the Court finds that it at raises a genuine issue of material fact sufficient to at least narrowly avoid summary judgment.

Exxon further asserts that even if a question about exposure exists, there is no evidence that this exposure was a substantial cause of his mesothelioma. R. Doc. 449-2 at 8. Specifically,

8

Exxon relies on the testimony of industrial hygiene expert Mr. Ewing, who, as explained above, testified that the insulation of asbestos on platforms constructed after 1975 could not have contained asbestos and that handling of gaskets in the manner Mr. Lopez described would not have resulted in significant exposure. R. Doc. 449-2 at 9. These arguments, however, hinge entirely on whether Mr. Lopez was exposed to asbestos in the manner Plaintiffs claim, which is a question for trial. Further, Mr. Ewing calculated the various levels of exposure Mr. Lopez would have sustained from activities such as the replacement of asbestos-containing gaskets, the replacement of dry asbestos-containing packaging, the removal and installation of insulation, and the use of asbestos blankets, and concluded that these activities produced greater than background levels of asbestos exposure. R. Doc. 505-8; Ewing Dep. 113-114. Plaintiffs' expert pathologist, Dr. Abraham, reviewed the testimony of Mr. Lopez and his colleagues, as well as the conclusions of Mr. Ewing, and opined that "all of Mr. Lopez's asbestos exposures (cumulative) above normal background levels, including those he experienced while employed at . . . Brown & Root, were substantial contributing factors in the development of his mesothelioma." R. Doc. 505-10 at 2.

Based on the foregoing, the Court concludes that whether Mr. Lopez was exposed to asbestos fibers while on Exxon platforms and whether such exposures substantially caused his mesothelioma are questions best answered by the trier of fact.

### b. Duty

Causation aside, Exxon argues summary judgment is additionally warranted because it did not have a duty to provide Mr. Lopez with a safe working environment.

Maintaining a negligence action requires a plaintiff to demonstrate by a preponderance of the evidence that the defendant owed the plaintiff a legal duty and breached that duty. *Thomas v. Burlington Res. Oil & Gas Co.*, No. CIV. A. 99-3904, 2000 WL 1528082, at *1 (E.D. La. Oct. 13,

2000). Whether a duty exists is a question of law. *Id*. In certain circumstances, a premises owner may be held vicariously liable for the acts of an independent contractor or directly liable for its own negligent acts. *Thomas v. A.P. Green Indus., Inc.*, 2005-1064 (La. App. 4 Cir. 5/31/06), 933 So. 2d 843, 851. The Court considers each theory of negligence in turn.

### i. Vicarious Liability

As a general rule, a principal is not liable for negligent acts of an independent contractor, unless the independent contractor is engaged in an ultrahazardous activity or the principal exercises operational control over the independent contractor's performance. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987). Additionally, vicarious liability may be imposed where the premises owner expressly or impliedly approved a contractor's unsafe work practice that caused the injury.[1] Only the second and third exceptions are relevant here, as the parties do not contend that Mr. Lopez was engaged in any ultrahazardous activities. R. Doc. 449-2 at 15.

Whether Exxon had a duty to Mr. Lopez under the second exception depends on whether Exxon had operational control over the performance of Brown & Root employees. "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003) (holding that no operational control existed where the independent contractor was "exclusively responsible for controlling the details" of its performance despite the on-site presence of the principal's representatives). Notably, "[t]he physical presence of a representative of a principal is not sufficient to show supervision or control," and periodic inspections by a principal's representative

---

[1] Whether this is a third, independent requirement, or part of the inquiry into operational control is unclear. *See Sandbom v. BASF Wyandotte, Corp.*, 95-0335 (La. App. 1 Cir. 4/30/96), 674 So. 2d 349, 357. For the sake of clarity, the Court addresses it separately here.

"do not equate to that principal retaining control over the operations conducted by" an independent contractor. *Id.* (citing *Ainsworth*, 829 F.2d at 550–51 (5th Cir. 1987)); *see also Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) (finding no operational control despite the principals' reservation of rights to monitor the contractor's performance, station a company man on the premises to observe the activities, and make safety recommendations).

Here, Mr. Lopez confirmed that while working on Exxon platforms, he was always under the direct supervision of a Brown and Root foreman. Lopez Dep. Vol. I 48:25-49:2. Although he noted that Exxon had inspectors on the premises, the inspectors were "inspecting the progress of the end product" rather than "telling [him] how to weld." *Id.* at 49:7-12]. He further noted that the tools and materials necessary for the projects were provided by Brown and Root, not Exxon, and that Brown and Root provided all training, safety instructions, and supervision. *Id.* at 48:25-50:4. He testified that he took no direct supervision from any Exxon employee. Lopez Dep. Vol. II, 50:1–5. Plaintiffs provide no meaningful opposition to this argument nor offer a different interpretation of Mr. Lopez's testimony. Accordingly, the summary judgment evidence indicates that Exxon did not have operational control over the performance of Brown and Root employees.

Plaintiffs additionally argue that vicarious liability can attach to a premises owner for negligent acts of an independent contractor when the premises owner expressly or impliedly approves the unsafe working practices that lead to injury. *See Sandbom*, 674 So. 2d 349. This exception is relevant to, and often subsumed by, the operational control exception. *See id.* at 354–355. Express or implied authorization requires some level of control over the performance of the unsafe work practice; mere knowledge of an unsafe work condition does not suffice. *See Roach v. Air Liquide Am.*, No. CV 2:12-3165, 2016 WL 1453074, at *3 (W.D. La. Apr. 11, 2016).

Plaintiffs rely on *Sandbom v. BASF Wyandotte, Corp.*, in which the court found that the

11

defendant expressly or impliedly authorized the plaintiff to engage in an unsafe work practice by entering a reservoir storage tank in a chemical plant without proper safety gear and without running certain tests to identify chemicals to which he would be exposed while in the tank. 674 So. 2d at 355. *Sandbom*, however, is distinguishable. In *Sandbom*, the defendant plant owner specifically instituted standard work practices and procedures governing all work conducted in the tank by independent contractors. The procedures involved express approval from defendant's representatives and the issuance of a safety checklist and work permit, which were only granted upon a supervisor's satisfaction that all relevant safety precautions were in place. Further, the defendant mandated that an attendant with knowledge of proper emergency procedures be stationed outside the tank and that air readings and content samples be taken to determine safety risks facing the independent contractor entering the tank. The *Sandbom* court found the defendant had expressly or impliedly authorized the unsafe work practices because the plaintiff was allowed to enter the tank without the proper equipment and without running the appropriate tests or monitoring any conditions in the tank. *Id.* at 355.

Here, in contrast, there is no evidence that Exxon imposed any requirements or conditions on the work performed by Brown and Root employees, let alone any specific safety procedures to which it later turned a blind eye, as in *Sandbom*. The Court finds *Roach v. Air Liquide Am.*, to be more on point. In *Roach*, the court concluded that the defendant premises owner did not have a duty to the employee of an independent contractor who performed sandblasting despite the defendant's knowledge that the sandblasting was performed in an unsafe manner. 2016 WL 1453074, at *4. As the court stressed, "[i]t is the employer's duty to determine the best means by which to accomplish the employee's work, and [the defendant premises owner] had no duty to intercede with the performance of that work." *Id*. The Court agrees and concludes that in the

absence of evidence that Exxon specifically recognized the risk associated with Brown and Root's work and authorized the unsafe practice, Exxon did not have a duty to Brown and Root employees under a theory of vicarious liability.

### ii. Direct Liability

"Although the independent contractor defense is a bar to a vicarious liability claim, it is not a bar to direct liability claim arising out of a premises-owner's own negligence." *Thomas*, 933 So. 2d at 852. Plaintiffs argue Exxon had a duty to protect Mr. Lopez from its own acts of negligence under a theory of direct, rather than vicarious, liability. Exxon argues that as a premises owner, it does not owe a duty to protect employees of an independent contractor from the hazards inherent in the job. R. Doc. 449-2 at 19.

In general, a premises owner has a duty to protect persons on the premises from the unreasonable risk of harm. *Mundy v. Dep't of Health & Human Res.*, 620 So. 2d 811, 813 (La. 1993). Although this duty extends "to the employees of independent contractors for whose benefit the owner must take reasonable steps to ensure a safe working environment," *Thomas*, 933 So. 2d at 852, it does not "require the owner or operator to intervene in and correct the work practices selected by an independent contractor." *Thomas*, 2000 WL 1528082, at *2. Rather, the existence of a duty of a principal to the employees of an independent contractor depends on "whether the hazard was created by the principal or the independent contractor." *Id*. (finding that the independent contractor created the hazardous conditions where the injurious work was directed by the independent contractor's foreman and granting summary judgment accordingly). Further, in a principal-independent contractor relationship, the principal does not owe a duty to protect the contractor's employees from risks inherent to the job. *Perkins v. Gregory Mfg. Co.*, 95-01396 (La. App. 3 Cir. 3/20/96), 671 So. 2d 1036, 1040, *writ denied*, 96-0971 (La. 5/31/96), 673 So. 2d 1039

(finding that the risk of being injured by a falling tree is a risk inherent to the role of a tree trimmer engaged in logging operations). Essentially, while a premises owner may be directly liable for hazards inherent in the premises, the owner cannot be liable for hazards inherent in a contractor's job.

In the instant case, the evidence indicates that any asbestos exposure suffered by Mr. Lopez while working on Exxon platforms resulted from tools, equipment, and materials supplied by the independent contract and accordingly was a risk inherent in his job as a welder and pipefitter. Mr. Lopez testified that the allegedly asbestos-containing insulation was present in jobs on all platforms, including those that did not belong to Exxon. Lopez Dep. Vol. II, 191:14-102:18. Not only were all the materials and tools necessary for completion of each project provided by Brown and Root, but the company also supervised the manner in which the work was performed. Lopez Dep. Vol. I 48:25-50:4. Accordingly, any asbestos exposure caused by the manipulation of insulation, gaskets, or asbestos blankets was inherently related to the job Mr. Lopez was hired by Brown and Root to perform, not to Exxon's premises itself. The mere fact that Exxon employees were on the premises and "had the blueprints for each platform," R. Doc. 505 at 21, does not change the fact that the danger of inhaling asbestos fibers is inherently related to the job Mr. Lopez performed, not the space in which he performed it.

Accordingly, Exxon cannot be held directly liable as a premises owner because the hazard of asbestos exposure is not inherent to Exxon's premises but to the nature of work performed by the welders and pipefitters employed by Brown and Root. *See Roach*, 2016 WL 1453074, at *4 (holding that the hazards associated with airborne silica was "inherent in the performance of" sandblasting because the airborne silica was "temporary in nature and transported to the facility by plaintiff's employer and/or a supplier"). As the *Roach* court explained, "it is the employer's

14

duty to ensure plaintiff's safety with respect to the specific hazards created by the performance of his work," not the premises owner. 2016 WL 1453074, at *4. Accordingly, summary judgment of Plaintiffs' negligence claims is warranted on the grounds that Exxon did not have a duty to Plaintiff under either a theory of direct or vicarious liability.

### a. Strict Liability

Under the version of article 2317 in effect at the time of Mr. Lopez's alleged exposure,[2] a plaintiff can succeed on a strict liability claim by proving that 1) the injury-causing thing was in the care, custody, and control of the defendant; 2) the thing had a vice or defect that created an unreasonable risk of harm; and 3) the plaintiff's injuries were caused by the vice or defect. *Palermo*, 933 So. 2d at 179. "[E]very non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." *Landry v. Avondale Industries, Inc.*, 2012-0950, p. 6 (La. App. 4 Cir. 3/6/13), 111 So.3d 508, 511. "A defect for the purposes of article 2317 is a flaw or condition of relative permanence inherent in the thing as one of its qualities." *Crane v. Exxon Corp., U.S.A.*, 613 So. 2d 214, 219 (La. Ct. App. 1992). Unlike with a negligence claim, in a strict liability case under this version of article 2317, the plaintiff is relieved of having to prove that the owner knew or should have known of the risk. *Watts*, 135 So. 3d at 60. "Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody." *Id*.

Exxon argues that the premises must create an unreasonable risk of harm in order to establish strict liability, and that "[i]t is well-established under Louisiana law that undisturbed asbestos does not create a defect that presents an unreasonable risk of harm." R. Doc. 449-2 at 21

---

[2] In cases involving long-latency occupational diseases such as mesothelioma, the court must apply the law in effect at the time of the exposure. *Watts v. Georgia-Pac. Corp.*, 2012-0620 (La. App. 1 Cir. 9/16/13), 135 So. 3d 53, 59 (citing *Cole v. Celotex Corp.*, 599 So.2d 1058, 1066 (La. 1992)).

(emphasis omitted) (citing *Palermo*, 933 So. 2d at 178). Further, Exxon argues that "Mr. Lopez's only alleged exposure to asbestos dust on Exxon platforms arose from construction activities of his employer, [Brown and Root]. The conditions found on a construction site are not a basis for strict liability." R. Doc. 499-2 at 22 (citing *Smith v. Union Carbide Corp.*, No. CIV.A. 13-6323, 2014 WL 4930457, at *7 (E.D. La. 2014)). In contrast, Plaintiffs argue the asbestos was in the care, custody or control of Exxon because it was located on Exxon's premises, and maintains that it has presented sufficient evidence to demonstrate that the material was disturbed in the fashion that would create an unreasonable risk of harm. R. Doc. 505 at 24. Additionally, Plaintiffs argue the asbestos exposure was not a temporary condition because the asbestos-containing materials were "incorporated into operational facilities and being removed and replaced by Mr. Lopez and others working around him as part of required and regular repair and maintenance." R. Doc. 505 at 25.

The record suggests that Exxon did not have care, custody, or control over the asbestos at the time it allegedly injured Mr. Lopez. "'Custody,' for purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled." *Haydel v. Hercules Transp., Inc.*, 94-0016 (La. App. 1 Cir. 4/7/95), 654 So. 2d 408, 414, *writ denied*, 95-1171 (La. 6/23/95), 656 So. 2d 1018. Mere physical presence is not dispositive. *Id*. In *Smith v. Union Carbide Corp.*, the Court concluded that the independent contractor, rather than the defendant premises owner, had custody of the injurious asbestos, despite the fact that the premises owners owned and retained physical custody of the asbestos. *Smith*, 2014 WL 4930457, at *3. In that case, there was evidence that the plaintiff "used his own tools and received instructions from the contractors who hired him." *Id.* at *1. A similar conclusion is warranted here. Although asbestos may have been present in materials, equipment,

16

and tools located on Exxon platforms, and that asbestos may have been disturbed, the record does not reflect that Exxon ever had care, custody, or control over that material. Rather, it was Brown & Root supervisors who provided the tools, equipment, and materials, oversaw the operation, and gave instructions to welders and pipefitters. Because the Court finds that Exxon was did not have care, custody, or control over the injurious product, the Court declines to address whether the defect was a temporary condition on the premises that would defeat a strict liability claim.

Having concluded that summary judgment is warranted with respect to Plaintiffs' negligence and strict liability claims, the Court need not address Exxon's arguments about punitive damages.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Exxon's Motion for Summary Judgment, R. Doc. 449, is **GRANTED**.

New Orleans, Louisiana this 2nd day of July, 2020.

                                                    Eldon E. Fallon
                                            United States District Court