UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERICO LOPEZ ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8977** |
| | **CONS. W/ 19-9928** |
| **MCDERMOTT, INC ET AL** | **SECTION "L" (5)** |
| **THIS ORDER RELATES TO:** *17-8977* | |

## ORDER & REASONS

Pending before the Court is a motion for summary judgment filed by Defendant Crosby Valves, R. Docs. 453, 479. Plaintiffs oppose the motion. R. Doc. 504. Defendant has filed a reply. R. Doc. 516. Oral argument was held on Wednesday, June 24, 2020 at 10:00 a.m. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.  BACKGROUND

In June 2017, Plaintiff Federico Lopez brought this lawsuit for asbestos exposure in Orleans Parish Civil District Court. R. Doc. 1-2 at 2. On September 13, 2017, the case was removed to this Court. Mr. Lopez died on November 9, 2017 after filing this claim. R. Doc. 61 at 1. Thereafter, his surviving spouse, Maricela Lopez, and surviving child, Federico Lopez III, maintained the case on Mr. Lopez's behalf and asserted a wrongful death claim. R. Doc. 61 at 1. The *Lopez* Plaintiffs filed a Sixth Amended Petition for Damages on September 24, 2018. R. Doc. 360.

In the operative complaint, Plaintiffs allege that Mr. Lopez was exposed to asbestos-containing products while employed as a welder/pipefitter by Kellog Brown and Root ("Brown

and Root") between 1973 and 1986. R. Doc. 360 at 2. Plaintiffs contend these exposures caused him to contract malignant mesothelioma later in life. R. Doc. 360 at 2. Plaintiffs brought suit against a number of defendants who manufactured asbestos containing products or owned the premises upon which the asbestos-containing products were used. R. Doc. 360 at 3. Plaintiffs' claims against these manufacturers and premises owners sound in negligence and strict liability.

On November 8, 2018, Plaintiffs Jessica and Alfred Soliz filed suit in the 19th Judicial Court for the Parish of East Baton Rouge asserting strict liability and negligence claims on behalf of Mr. Lopez, alleging they were also Mr. Lopez's children. No. 19-9928, R. Doc. 1-2. This case was transferred to this Court on March 8, 2019, R. Doc. 1, and consolidated with the *Lopez* matter on June 10, 2019, R. Doc. 21.

## II. PRESENT MOTION

Defendant Crosby Valves ("Crosby") has filed a motion for summary judgment in the *Lopez* matter.[1] First, Crosby Valves argues that there is no admissible evidence that a Crosby-manufactured product exposed Mr. Lopez to asbestos because Mr. Lopez's testimony is inadmissible hearsay under both the Louisiana Code of Evidence and the Louisiana Code of Civil procedure. R. Doc. 479 at 6–9. Specifically, Crosby contends that Mr. Lopez's former deposition testimony is inadmissible because neither Crosby nor a similarly situated valve defendant was present at his deposition. R. Doc. 479 at 6–7.

Second, Crosby argues that even if Mr. Lopez's testimony is admissible, Plaintiffs cannot prove that exposure to its products was a substantial cause of Mr. Lopez's mesothelioma as required under Louisiana law. R. Doc. 479 at 9. Specifically, Crosby Valves cites the depositions

---

[1] Crosby initially filed a motion for summary judgment on February 28, 2020. R. Doc. 453. On March 6, 2020, Crosby filed a supplemental and updated memorandum in support of its motion for summary judgment that narrowed the issues presented in the motion. R. Doc. 479. The Court refers to the amended memorandum throughout this Order and Reasons.

of two of Plaintiffs' experts, Dr. Abraham and Mr. Ewing, claiming that neither expert provides "a specific opinion that exposure to Crosby products was a substantial cause of Decedent's mesothelioma." R. Doc. 479 at 11.

Plaintiffs oppose Crosby's motion for summary judgment. R. Doc. 504. As an initial matter, Plaintiffs clarify that their claims against Crosby involve exposure not from Crosby's valve products themselves, but from asbestos-containing components of those valves, such as flange gaskets and packing products. R. Doc. 504 at 5. Accordingly, Plaintiffs contend Mr. Lopez's testimony is admissible against Crosby because his deposition was attended by gasket and packing manufacturer defendants who had a similar motive and opportunity to cross-examine him. Moreover, Plaintiffs argue that even if Mr. Lopez's testimony is inadmissible, the testimony of Mr. Lopez's coworkers is sufficient to demonstrate exposure to a Crosby product. R. Doc. 504 at 13-14. Lastly, Plaintiffs maintain they have established that Mr. Lopez's work with Crosby products was a substantial cause of his mesothelioma, citing the testimony of Mr. Ewing, an industrial hygienist who indicated that Mr. Lopez experienced above-background levels of exposure while performing routine tasks for Brown and Root and that all of these exposures substantially caused his malignant mesothelioma. R. Doc. 504 at 21.

In reply, Crosby contends any gasket defendants present at Mr. Lopez's deposition would not have shared Crosby's interest or motive in cross-examining the deponent. Instead, Crosby argues, all defendants in asbestos litigation are motivated to "establish[] the liability of as many parties as possible to . . . limit the potential damages against them" under the virile share analysis. R. Doc. 516 at 3. Crosby further argues the testimony of Mr. Lopez's co-worker is insufficient to demonstrate Mr. Lopez's alleged exposure because his coworker "expressly testified that he never saw Mr. Lopez work with, on, or around a Crosby piece of equipment." R. Doc. 516 at 4. Lastly,

Crosby stresses again that neither of Plaintiffs' experts opined specifically about exposure related to any Crosby products. R. Doc. 516 at 5.

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and

draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B. Causation

To prevail in an asbestos case under Louisiana law, a plaintiff "must prove by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant; and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma." *Romano v. Metro Life Ins. Co.*, 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So.3d 176, 182; *see also Palermo v. Port of New Orleans*, 2004-1804 (La. App. 4 Cir. 3/15/06), 933 So. 2d 168, 181 ("To determine whether a particular source of exposure to asbestos was a cause-in-fact of a plaintiff's asbestos-related disease, Louisiana courts employ a "substantial factor" test. Simply stated, the particular exposure must be a substantial contributing factor to the plaintiff's disease."). "When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature." *Vodanovich v. A.P. Green Industries, Inc.*, 03-1079, pp. 3-4 (La. App. 4 Cir. 3/3/04), 869 So. 2d 930, 932–33 (citation omitted). "Whether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973).

Accordingly, in this case, the *Lopez* Plaintiffs bear the burden of proving that Mr. Lopez was exposed to asbestos attributable to Crosby and that this exposure was a substantial factor in the development of his disease. Defendant contends the only evidence of exposure is found in Mr.

Lopez's deposition testimony, which constitutes inadmissible hearsay. The Court considers this argument before turning to the sufficiency of the evidence regarding exposure and causation.

### 1. Whether Mr. Lopez's testimony is admissible against Crosby

Crosby contends the only evidence that Mr. Lopez was exposed to asbestos attributable to a Crosby product comes from Mr. Lopez's deposition testimony, which is inadmissible for use against Crosby under the Louisiana Code of Evidence and the Louisiana Civil Code. Crosby maintains that because neither Crosby nor a similarly situated defendant attended Mr. Lopez's deposition, his testimony is inadmissible hearsay. R. Doc. 479 at 9.

Like the Federal Rules of Evidence, the Louisiana Code of Evidence generally provides that hearsay—meaning "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted"—is typically inadmissible. La. Code Evid. art 801(C). Nevertheless, the hearsay rule is riddled with exceptions. *Id.* arts. 802-804. One such exception exists for former testimony provided by an unavailable declarant. *Id.* art. 804(B)(1). An unavailable declarant is one who "cannot or will not appear in court and testify to the substance of his statement made outside of court." *Id.* art. 804(A). Specifically, the rule provides:

> [t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination . . .

*Id.* art. 804(B)(1). The proponent of the proffered evidence bears the burden of demonstrating that a hearsay exception applies. *See, e.g.*, *Bergeron v. Great W. Cas. Co.*, No. CIV.A. 14-13, 2015 WL 3505091, at *4 (E.D. La. June 3, 2015).

Here, Mr. Lopez is deceased, and his prior testimony was given under oath; accordingly, he undisputedly qualifies as an unavailable declarant. His deposition testimony, if offered to prove that Mr. Lopez worked with products manufactured by Crosby, would undoubtedly constitute hearsay. The question is, therefore, whether "a party with a similar interest" to Crosby "had an opportunity and similar motive to develop [his] testimony by direct, cross, or redirect examination" during his deposition.[2] La. Code Evid. art. 804(b)(1).

To establish "opportunity and similar motive" in cases in which the parties in the current and former proceedings are different, the Fifth Circuit has endorsed a "fact-specific" inquiry that considers whether the questioner "is on the same side of the same issue at both proceedings" and "whether the questioner had a substantially similar interest in asserting and prevailing on the issue." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000) (citing *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir. 1993)) (considering the almost identical federal rule). As another court put it, "there must be 'sufficient identity of issues to ensure that cross examination in the former case was directed to the issues presently relevant, and that the former parties were the same in motive and interest.'" *Holmquist,* 800 F. Supp. 2d at 310 (quoting *Hicks Co. v. Commissioner,* 470 F.2d 87, 90 (1st Cir. 1972)). "Because similar motive does not mean identical motive, the similar-motive inquiry is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the questioning." *Battle*, 228 F.3d at 552.

---

[2] The Louisiana rule is remarkably similar to Federal Rule of Evidence 804(b)(1), which allows for the admission of former testimony offered against a party whose predecessor in interest had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). In fact, the comments to Louisiana's exception under 804(b)(1) indicate that the Louisiana rule was modified to clarify and broaden the exception by replacing "a predecessor in interest" with "a party with a similar interest." La. Code Evid. 804, Comments to Exception (B)(1) – 1988. This change, the comments continue, "creates in civil cases a broader exception to the hearsay rule than that presumably intended by the United States House of Representatives in its amendment to the" federal hearsay rule. *Id.*

7

In the instant case, Plaintiffs' claims against Crosby arise from alleged asbestos exposure not from the valves themselves, but from work on gaskets and packing, the incorporation of which is necessary for the valves to function as intended. Plaintiffs therefore assert that even though Crosby itself did not attend Mr. Lopez's deposition, its interests were safeguarded by the presence of gasket and packing defendants, such as John Crane, who had the motivation and opportunity to cross-examine Mr. Lopez about his work with such products. Crosby firmly denies that any party present at the deposition shared its motive to develop Mr. Lopez's testimony. In particular, Crosby suggests that John Crane and any other gasket or packing defendants did not share its "similar motive" because in an asbestos case, each defendant is motivated to pin liability on as many other parties as possible to reduce its respective virile share. R. Doc. 507-2 at 3. Additionally, Crosby's counsel suggested at oral argument that John Crane was clearly not similarly motivated because John Crane's attorney focused the majority of his questioning on exposure to gaskets and packing that occurred while Mr. Lopez was employed by Lamons Gasket Company, not Brown and Root. Accordingly, counsel suggests that the actual questions posed illustrate that Crosby's interests were unprotected as no party probed the specific line of testimony it would have attempted to elicit.

The Court concludes that this testimony is admissible against Crosby. While not identical, John Crane and any other gasket or packing defendants that may have been present at Mr. Lopez's deposition had a sufficiently similar motive to that Crosby would have had, had it been present at the deposition. Although Crosby is certainly correct in suggesting that all defendants in asbestos cases involving this time period are motivated by demonstrating the liability of other parties to reduce their own virile share, this is rarely a party's *only* motivation. Disproving liability is more useful a goal than merely reducing it, and other courts have found that defendants in asbestos cases are primarily motivated by developing a plaintiff's testimony to show that he was never exposed

to a particular product. *See Vedros v. Grumman*, No. CIV.A. 11-1198, 2015 WL 3796379, at *4 (E.D. La. June 18, 2015) ("Because both Continental and Maryland Casualty had a primary motive to develop Vedros's testimony to show that she was never exposed to asbestos through Marquette's products, the requirements of Rule 804(b)(1) are satisfied."). Surely here the gasket and packing manufacturers that attended Mr. Lopez's deposition were primarily motivated to elicit testimony about Mr. Lopez's exposure to their specific products. Accordingly, the Court is convinced that the defendants here shared a substantially similar motive.

Further, as the Fifth Circuit has stated, "[t]he availability of cross-examination opportunities that were forgone is one factor to be considered, but is not conclusive because examiners will virtually always be able to suggest lines of questioning that were not pursued at a prior proceeding." *Battle*, 228 F.3d at 552–53 (concluding that a similarity of interest existed despite the fact that the representative at the deposition "did not aggressively test [the witness's] answers with cross-examination type questions" and was motivated instead "only by the desire to understand Plaintiffs' case"). Accordingly, the Court is not convinced that the failure of any gasket or packing defendant to mimic the exact same line of question that Crosby would have initiated renders this testimony inadmissible.

Moreover, the admission of this testimony is in line with the purpose of the rules of evidence as a whole, which are to be construed liberally in favor of the admission of evidence. *See* Fed. R. Evid. 402. As the Fifth Circuit has explained, "like other inquiries involving the admission of evidence, the similar-motive inquiry appropriately reflects narrow concerns of ensuring the reliability of evidence admitted at trial." *Battle*, 228 F.3d at 552. Crosby has not challenged or provided any reasons to question the reliability of Mr. Lopez's testimony. Mr. Lopez was questioned at length by his own counsel and crossed by numerous defendants. He was specifically

9

asked about his work on Crosby valves and a representative of a company that manufactured allegedly injurious gaskets and packing and sold them to Crosby was present at the deposition and questioned him about these products. The fact that the questions were not posed in the same manner as Crosby wishes and the fact that the other defendant's motive was not identical does not render this testimony unreliable or inadmissible.

Crosby also argues that Plaintiffs' use of Mr. Lopez's deposition testimony is prohibited by Louisiana Civil Code article 1432, which allows the use of deposition testimony at trial "in any action involving the same subject matter subsequently brought in any court of this state," and article 1450(A), which allows the use of deposition testimony of an unavailable witness at trial only "against any party who was present or represented at the taking of the deposition." La. Code Civ. P. arts. 1432, 1450(A). Further, the deposition may be used if it would also be admissible under the Code of Evidence. *Id.* art. 1450(A). As Crosby recognizes, conflicts between this rule and Code of Evidence article 804 are committed to the court's discretion. *Id.* art 1450(C). The Court has already resolved the admissibility of Mr. Lopez's testimony as against Crosby, at least with respect to Code of Evidence article 804, and nothing about these civil code provisions warrants a different outcome.

Lastly, Crosby's reliance on *Trascher v. Territo* is misplaced. In *Trascher*, the court concluded that the deposition testimony of an unavailable witness was inadmissible under article 1450(A) because the defendants did not have the opportunity to cross-examine the witness. 2011-2093 (La. 5/8/12), 89 So. 3d 357, 364. Notably, however, the witness in *Trascher* was deposed for only fifteen minutes due to his ailing health. *Id.* at 360. The deposition was terminated before plaintiff's counsel's questions were complete, and the witness died before *any* defendant had the opportunity to question him. *Id*. In contrast here, Mr. Lopez was questioned over two days by

10

numerous defendants, including defendants who, for the reasons explained above, shared Crosby's interest in probing Mr. Lopez's recollection about exposure to asbestos-containing gaskets and packing. For these reasons, the Court finds that Mr. Lopez's testimony is admissible in this matter and notes that his testimony about working on Crosby products is sufficient to raise a genuine issue of material fact regarding exposure. The Court now considers whether there is sufficient evidence that exposure to Crosby products was a substantial contributing cause of his illness.

2. **Whether exposure to a product manufactured by Crosby or Fisher substantially contributed to Mr. Lopez's mesothelioma**

Even if Mr. Lopez's testimony is admissible and sufficient to preclude summary judgment on the basis of exposure, Crosby contends causation cannot be established because there is no evidence that exposure to its products was a substantial contributing cause of Mr. Lopez's mesothelioma.

To determine whether a particular source of exposure to asbestos was a cause-in-fact of a plaintiff's asbestos-related disease, Louisiana courts employ a "substantial factor" test. Simply stated, the particular exposure must be a substantial contributing factor to the plaintiff's disease." *Palermo*, 933 So. 2d at 181. In other words, "[w]hen multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature." *Vodanovich*, 869 So. 2d at 932–33 (citation omitted). "Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder." *Perkins v. Entergy Corp.*, 782 So.2d 606, 612 (La. 2001) (citing *Theriot v. Lasseigne*, 640 So. 2d 1305, 1310 (1994)).

Considered in the light most favorable to Plaintiffs, the relevant evidence is sufficient to withstand summary judgment. It is true that Mr. Ewing, the industrial hygiene expert, testified that he did not have sufficient data to perform dose reconstruction with respect to Crosby specifically. Ewing Dep. 38:21–25, 39:1–6; 45:19–25; 46:1–4, Jan. 28, 2020. Dr. Abraham, Plaintiffs' medical expert also testified that he could not independently quantify which products or pieces of equipment specifically caused Mr. Lopez's disease. Abraham Dep., 65:15–22, Feb. 12, 2020. However, Mr. Lopez and his co-worker, Mr. Buchanan, both testified about repairing and replacing gaskets on Crosby valves using putty knives, scrapers, wire brushes, and electric wheels, in a fashion that created dusty conditions which affected their breathing and got on their clothes. Lopez Dep. 74:05–76:14, 77:1–78:1; 240:22–241:09, Aug. 16, 2017; Buchanan Dep. 29:06–20, Sep. 9, 2019.

After reviewing this testimony and the relevant scientific literature, Mr. Ewing opined that this activity would likely produce exposures in the range of 0.05 f/cc to 1.0 f/cc, or above-background levels. R. Doc. 504-7 at 12. He explained that his opinions were based on "packaging and gasket exposures, not about what brand of valve might have been on one side of a flange or not," and that he relied on eyewitness testimony of product identification witnesses because he had no independent knowledge of the products at Mr. Lopez's worksite. Ewing Dep. 119:20–120:18; 120:25; 123:4–9. Dr. Abraham relied on Mr. Ewing's report and testified that the above-background level exposures experienced by Mr. Lopez while working on gaskets and valves was a substantial cause of his mesothelioma. R. Doc. 504-9 at 4–5, 8, 9; Abraham Dep., 64:24–67:14. This evidence, viewed in the light most favorable to Plaintiffs, is sufficient to indicate that a genuine question of material fact exists with respect to whether Mr. Lopez's exposure to asbestos

12

attributable to Crosby was a substantial contributing cause of his mesothelioma. Accordingly, summary judgment is not appropriate.

## IV. CONCLUSION

Considering the foregoing.

**IT IS ORDERED** that Defendant Crosby's Motion for Summary Judgment, R. Doc. 453, is **DENIED**.

New Orleans, Louisiana this 2nd day of July, 2020.

_____
Eldon E. Fallon
United States District Court