UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERICO LOPEZ ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8977**<br>**CONS. W/ 19-9928** |
| **MCDERMOTT, INC ET AL** | **SECTION "L" (5)** |
| **THIS ORDER RELATES TO:** *17-8977* | |

## ORDER & REASONS

Pending before the Court is a motion for summary judgment filed by Defendant Fisher Controls International, R. Doc. 456. Plaintiffs oppose the motion. R. Doc. 506. Defendant had filed a reply. R. Doc. 518. Oral argument was held on Wednesday, June 24, 2020 at 10:00 a.m. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I. **BACKGROUND**

In June 2017, Plaintiff Federico Lopez brought this lawsuit for asbestos exposure in Orleans Parish Civil District Court. R. Doc. 1-2 at 2. On September 13, 2017, the case was removed to this Court. Mr. Lopez died on November 9, 2017 after filing this claim. R. Doc. 61 at 1. Thereafter, his surviving spouse, Maricela Lopez, and surviving child, Federico Lopez III, maintained the case on Mr. Lopez's behalf and asserted a wrongful death claim. R. Doc. 61 at 1. The *Lopez* Plaintiffs filed a Sixth Amended Petition for Damages on September 24, 2018. R. Doc. 360.

In the operative complaint, Plaintiffs allege that Mr. Lopez was exposed to asbestos-containing products while employed as a welder/pipefitter at Kellog Brown and Root ("Brown and

1

Root") between 1973 and 1986. R. Doc. 360 at 2. Plaintiffs contend these exposures caused him to contract malignant mesothelioma later in life. R. Doc. 360 at 2. Plaintiffs brought suit against a number of defendants who manufactured asbestos containing products or owned the premises upon which the asbestos-containing products were used. R. Doc. 360 at 3. Plaintiffs' claims against these manufacturers and premises owners sound in negligence and strict liability.

On November 8, 2018, Plaintiffs Jessica and Alfred Soliz filed suit in the 19th Judicial Court for the Parish of East Baton Rouge asserting strict liability and negligence claims on behalf of Mr. Lopez, alleging they were also Mr. Lopez's children. No. 19-9928, R. Doc. 1-2. This case was transferred to this Court on March 8, 2019, R. Doc. 1, and consolidated with the *Lopez* matter on June 10, 2019, R. Doc. 21.

## II. PRESENT MOTION

Defendant Fisher Controls International, LLC ("Fisher") has filed a motion for summary judgment in the *Lopez* matter. R. Doc. 456. Fisher contends Plaintiffs cannot demonstrate the causation element of their negligence claims because there is a lack of admissible evidence that a Fisher product exposed Mr. Lopez to asbestos. Additionally, Fisher avers it never manufactured the type of oil pipeline pumps described in Mr. Lopez's testimony. Fisher also argues Plaintiffs cannot demonstrate that exposure to a Fisher-manufactured asbestos-containing product was a substantial contributing cause of Mr. Lopez's mesothelioma. *Id*. at 7, 8, 10, 12, 15. Lastly, Fisher argues it cannot be liable for harm caused by components of its product that it did not manufacture or supply, such as flange gaskets. Accordingly, Fisher claims that Plaintiffs cannot survive summary judgment. *Id*. at 13.

Plaintiffs oppose Fisher's motion for summary judgment. R. Doc. 506. Plaintiffs contend that Mr. Lopez's testimony is admissible against Fisher because his deposition was attended by

2

gasket and packing manufacturer defendants who had a similar motive and opportunity to cross-examine him; namely the motive to "limit or eliminate exposure to gaskets and packing." *Id.* at 14. Moreover, Plaintiffs argue that even if Mr. Lopez's testimony is inadmissible, the testimony of Mr. Lopez's coworkers is sufficient to demonstrate exposure to a Fisher product. *Id.* at 15–16. Plaintiffs further maintain they have established that Mr. Lopez's work with Fisher products was a substantial cause of his mesothelioma, citing the testimony of Mr. Ewing, who "quantified the exposure Mr. Lopez experienced through performing these tasks, and each of them resulted in an exposure above background," and Dr. Abraham, who "opined that each of Mr. Lopez's exposures to above normal background levels of asbestos, including those he experienced while employed at Brown & Root, were substantial contributing factors in the development of his malignant mesothelioma." *Id.*

Lastly, Plaintiffs explain that Fisher's reliance on the "bare-metal defense," by which it attempts to disclaim liability for asbestos exposure caused by parts and components of its products that it did not itself manufacture or sell, is misplaced for several reasons. Noting that the Supreme Court has recently commented on the issue in *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 203 L. Ed. 2d 373 (2019), Plaintiffs argue that Fisher owed a duty to warn Mr. Lopez of the hazards of asbestos exposure from these component parts "because 1) it sold its valves with asbestos-containing packing and gaskets included, 2) its valves would not function properly without the use of gaskets and packing, 3) the removal and replacement of gaskets and packing from its valves was foreseeable, and 4) Fisher sold asbestos-containing replacement parts for its valves." *Id.* at 16.

In reply, Fisher contends any gasket defendants present at Mr. Lopez's deposition would not have shared Fishers' interest or motive in cross-examining the deponent. Instead, Fisher argues, all defendants in asbestos litigation are motivated to "establish[] the liability of as many

parties as possible to . . . limit the potential damages against them" under the virile share analysis. R. Doc. 518 at 3. Fisher further argues the testimony of Mr. Lopez's co-worker is insufficient to demonstrate Mr. Lopez's alleged exposure because his coworker "expressly testified that he never saw Mr. Lopez work on, near, or around a Fisher valve." R. Doc. 518 at 4. Lastly, Fisher stresses again that neither of Plaintiffs' experts opined specifically about exposure related to any Fisher products. R. Doc. 518 at 5.

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are

insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B. Causation

To prevail in an asbestos case under Louisiana law, a plaintiff "must prove by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant; and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma." *Romano v. Metro Life Ins. Co.*, 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So.3d 176, 182; *see also Palermo v. Port of New Orleans*, 2004-1804 (La. App. 4 Cir. 3/15/06), 933 So. 2d 168, 181 ("To determine whether a particular source of exposure to asbestos was a cause-in-fact of a plaintiff's asbestos-related disease, Louisiana courts employ a "substantial factor" test. Simply stated, the particular exposure must be a substantial contributing factor to the plaintiff's disease."). "When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature." *Vodanovich v. A.P. Green Industries, Inc.*, 03-1079, pp. 3-4 (La. App. 4 Cir. 3/3/04), 869 So.2d 930, 932–33 (citation omitted). "Whether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973).

Accordingly, in this case, the *Lopez* Plaintiffs bear the burden of proving that Mr. Lopez was exposed to asbestos attributable to Fisher and that this exposure was a substantial factor in the development of his disease. Defendant contends the only evidence of exposure is found in Mr. Lopez's deposition testimony, which constitutes inadmissible hearsay. The Court considers this argument before turning to the sufficiency of the evidence regarding exposure and causation.

### 1. Whether Mr. Lopez's testimony is admissible against Fisher

Fisher contends the only evidence that Mr. Lopez was exposed to asbestos attributable to a Fisher product comes from Mr. Lopez's deposition testimony, which is inadmissible for use against Fisher under the Louisiana Code of Evidence and the Louisiana Civil Code. Fisher maintains that because neither Fisher nor a similarly situated defendant attended Mr. Lopez's deposition, his testimony is inadmissible hearsay. R. Doc. 456 at 7–8.

Like the Federal Rules of Evidence, the Louisiana Code of Evidence generally provides that hearsay—meaning "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted"—is typically inadmissible. La. Code Evid. art 801(C). Nevertheless, the hearsay rule is riddled with exceptions. *Id.* arts. 802-804. One such exception exists for former testimony provided by an unavailable declarant. *Id.* art. 804(B)(1). An unavailable declarant is one who "cannot or will not appear in court and testify to the substance of his statement made outside of court." *Id.* art. 804(A). Specifically, the rule provides:

> [t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination . . .

6

*Id*. art. 804(B)(1). The proponent of the proffered evidence bears the burden of demonstrating that a hearsay exception applies. *See, e.g.*, *Bergeron v. Great W. Cas. Co.*, No. CIV.A. 14-13, 2015 WL 3505091, at *4 (E.D. La. June 3, 2015).

Here, Mr. Lopez is deceased and his prior testimony was given under oath; accordingly, he undisputedly qualifies as an unavailable declarant. His deposition testimony, if offered to prove that Mr. Lopez worked with products manufactured by Fisher, would undoubtedly constitute hearsay. The question is, therefore, whether "a party with a similar interest" to Fisher "had an opportunity and similar motive to develop [his] testimony by direct, cross, or redirect examination" during his deposition. [1] La. Code Evid. art. 804(b)(1).

To establish "opportunity and similar motive" in cases in which the parties in the current and former proceedings are different, the Fifth Circuit has endorsed a "fact-specific" inquiry that considers whether the questioner "is on the same side of the same issue at both proceedings" and "whether the questioner had a substantially similar interest in asserting and prevailing on the issue." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000) (citing *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir. 1993)) (considering the almost identical federal rule). As another court put it, "there must be 'sufficient identity of issues to ensure that cross examination in the former case was directed to the issues presently relevant, and that the former parties were the same in motive and interest.'" *Holmquist,* 800 F. Supp. 2d at 310 (quoting *Hicks Co. v. Commissioner,* 470 F.2d 87, 90 (1st Cir. 1972)). "Because similar motive

---

[1] The Louisiana rule is remarkably similar to Federal Rule of Evidence 804(b)(1), which allows for the admission of former testimony offered against a party whose predecessor in interest had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). In fact, the comments to Louisiana's exception under 804(b)(1) indicate that the Louisiana rule was modified to clarify and broaden the exception by replacing "a predecessor in interest" with "a party with a similar interest." La. Code Evid. 804, Comments to Exception (B)(1) – 1988. This change, the comments continue, "creates in civil cases a broader exception to the hearsay rule than that presumably intended by the United States House of Representatives in its amendment to the" federal hearsay rule.

does not mean identical motive, the similar-motive inquiry is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the questioning." *Battle*, 228 F.3d at 552.

In the instant case, Plaintiffs' claims against Fisher arise from alleged asbestos exposure not from the valves themselves, but from work on gaskets and packing the incorporation of which is necessary for the valves to function as intended. Plaintiffs therefore assert that even though Fisher itself did not attend Mr. Lopez's deposition, its interests were safeguarded by the presence of gasket and packing defendants, such as John Crane, who had the motivation and opportunity to cross-examine Mr. Lopez about his work with such products. Fisher firmly denies that any party present at the deposition shared its motive to develop Mr. Lopez's testimony. In particular, Fisher suggests that John Crane and any other gasket or packing defendants did not share its "similar motive" because in an asbestos case, each defendant is motivated to pin liability on as many other parties as possible to reduce its respective virile share. R. Doc. 518 at 3. Additionally, Fishers' counsel suggested at oral argument that John Crane was clearly not similarly motivated because John Crane's attorney focused the majority of his questioning on exposure to gaskets and packing that occurred while Mr. Lopez was employed by Lamons Gasket Company, not Brown and Root. Accordingly, counsel suggests that the actual questions posed illustrate that Fisher's interests were unprotected as no party probed the specific line of testimony it would have attempted to elicit.

The Court concludes that this testimony is admissible against Fisher. While not identical, John Crane and any other gasket or packing defendants that may have been present at Mr. Lopez's deposition had a sufficiently similar motive to that Fisher would have had, had it been present at the deposition. Although Fisher is certainly correct in suggesting that all defendants in asbestos cases involving this time period are motivated by demonstrating the liability of other parties to

reduce their own virile share, this is rarely a party's *only* motivation. Disproving liability is more useful a goal than merely reducing it, and other courts have found that defendants in asbestos cases are primarily motivated by developing a plaintiff's testimony to show that he was never exposed to a particular product. *See Vedros v. Grumman*, No. CIV.A. 11-1198, 2015 WL 3796379, at *4 (E.D. La. June 18, 2015) ("Because both Continental and Maryland Casualty had a primary motive to develop Vedros's testimony to show that she was never exposed to asbestos through Marquette's products, the requirements of Rule 804(b)(1) are satisfied."). Surely here the gasket and packing manufacturers that attended Mr. Lopez's deposition were primarily motivated to elicit testimony about Mr. Lopez's exposure to their specific products. Accordingly, the Court is convinced that the defendants here shared a substantially similar motive.

Further, as the Fifth Circuit has stated, "[t]he availability of cross-examination opportunities that were forgone is one factor to be considered, but is not conclusive because examiners will virtually always be able to suggest lines of questioning that were not pursued at a prior proceeding." *Battle*, 228 F.3d at 552–53 (concluding that a similarity of interest existed despite the fact that the representative at the deposition "did not aggressively test [the witness's] answers with cross-examination type questions" and was motivated instead "only by the desire to understand Plaintiffs' case"). Accordingly, the Court is not convinced that the failure of any gasket or packing defendant to mimic the exact same line of question that Fisher would have initiated renders this testimony inadmissible.

Moreover, the admission of this testimony is in line with the purpose of the rules of evidence as a whole, which are to be construed liberally in favor of the admission of evidence. *See* Fed. R. Evid. 402. As the Fifth Circuit has explained, "like other inquiries involving the admission of evidence, the similar-motive inquiry appropriately reflects narrow concerns of ensuring the

reliability of evidence admitted at trial." *Battle*, 228 F.3d at 552. Fisher has not challenged or provided any reasons to question the reliability of Mr. Lopez's testimony. Mr. Lopez was questioned at length by his own counsel and crossed by numerous defendants. He was specifically asked about his work on Fisher valves and a representative of a company that manufactured the allegedly injurious gaskets and packing and sold them to Fisher was present at the deposition and questioned him about these products. The fact that the questions were not posed in the same manner as Fisher wishes and the fact that the other defendant's motive was not identical does not render this testimony unreliable or inadmissible.

Fisher also argues that Plaintiffs' use of Mr. Lopez's deposition testimony is prohibited by Louisiana Civil Code article 1432, which allows the use of deposition testimony at trial "in any action involving the same subject matter subsequently brought in any court of this state," and article 1450(A), which allows the use of deposition testimony of an unavailable witness at trial only "against any party who was present or represented at the taking of the deposition." La. Code Civ. P. arts. 1432, 1450(A). Further, the deposition may be used if it would also be admissible under the Code of Evidence. *Id*. art. 1450(A). As Fisher recognizes, conflicts between this rule and Code of Evidence article 804 are committed to the court's discretion. *Id*. art 1450(C). The Court has already resolved the admissibility of Mr. Lopez's testimony as against Fisher, at least with respect to Code of Evidence article 804, and nothing about these civil code provisions warrants a different outcome.

Lastly, Fisher's reliance on *Trascher v. Territo* is misplaced. In *Trascher*, the court concluded that the deposition testimony of an unavailable witness was inadmissible under article 1450(A) because the defendants did not have the opportunity to cross-examine the witness. 2011-2093 (La. 5/8/12), 89 So. 3d 357, 364. Notably, however, the witness in *Trascher* was deposed for

only fifteen minutes due to his ailing health. *Id.* at 360. The deposition was terminated before plaintiff's counsel's questions were complete, and the witness died before *any* defendant had the opportunity to question him. *Id.* In contrast here, Mr. Lopez was questioned for nine hours over two days by numerous defendants, including defendants who, for the reasons explained above, shared Fisher's interest in probing Mr. Lopez's recollection about exposure to asbestos-containing gaskets and packing. For these reasons, the Court finds that Mr. Lopez's testimony is admissible in this matter. The Court now considers whether there is sufficient evidence that Mr. Lopez was exposed to asbestos attributable to Fisher products and whether this exposure to Fisher products was a substantial contributing cause of his illness.

## 2. Whether Mr. Lopez was exposed to a product manufactured by Fisher

As noted above, Plaintiffs bear the burden of demonstrating that Mr. Lopez was exposed to Fisher's asbestos products and that this exposure was a substantial factor in causing his disease. *See Romano*, 221 So.3d at 182. Fisher contends this element cannot be satisfied because it never manufactured the types of oil pipeline pumps at issue here. R. Doc. 456 at 10.

As an initial matter, Fisher contends it never manufactured oil pipeline *pumps*, but Plaintiffs' briefing and supporting materials attempt to attach Fisher's liability to its manufacture of *valves*. Specifically, Mr. Lopez testified that some of his responsibilities while employed by Brown and Root involved removing and repairing valves on old offshore drilling platforms. Lopez Dep. 57:9–10, Aug. 16, 2017 [hereinafter Lopez Dep. Vol. I]. He estimated that 40% of the valves he worked on were manufactured by Fisher, and the other 60% by Crosby Valves. Lopez Dep. Vol. I 78:02–16. Mr. Lewis, one of Mr. Lopez's co-workers, recalled that Fisher was "one of only two brands available at Brown & Root," R. Doc. 506 at 5; Lewis Dep. 225:17–25, Oct. 23, 2019, and Mr. Buchanan also confirmed seeing products manufactured by these companies at the work

11

site. Buchanan Dep. 25:13–22, 25:20–26:02, Sep. 9, 2019. Additionally, Fisher's corporate representative, Ronald Duimstra, testified at length about Fisher's valve-manufacturing operation. R. Doc. 506-5. Accordingly, considering the evidence in the light most favorable to Plaintiffs, a genuine question of fact exists regarding whether Fisher manufactured the very valves Mr. Lopez and his co-workers worked on and around while employed by Brown and Root.

### 3. Whether exposure to a product manufactured by Fisher substantially contributed to Mr. Lopez's mesothelioma

Even if Mr. Lopez's testimony is admissible and sufficient to preclude summary judgment on the basis of exposure, Fisher contends causation cannot be established because there is no evidence that exposure to its products was a substantial contributing cause of Mr. Lopez's mesothelioma.

To determine whether a particular source of exposure to asbestos was a cause-in-fact of a plaintiff's asbestos-related disease, Louisiana courts employ a "substantial factor" test. Simply stated, the particular exposure must be a substantial contributing factor to the plaintiff's disease." *Palermo*, 933 So. 2d at 181. In other words, "[w]hen multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm. There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature." *Vodanovich*, 869 So. 2d at 932–33 (citation omitted). "Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder." *Perkins v. Entergy Corp.*, 782 So. 2d 606, 612 (La. 2001) (citing *Theriot v. Lasseigne*, 640 So. 2d 1305, 1310 (La. 1994)).

Considered in the light most favorable to Plaintiffs, the relevant evidence is sufficient to withstand summary judgment. It is true that Mr. Ewing, the industrial hygiene expert, testified that

he did not have sufficient data to perform dose reconstruction with respect to Fisher specifically. Ewing Dep. 38:21–25, 39:1–6; 45:19–25; 46:1–4, Jan. 28, 2020. Dr. Abraham, Plaintiffs' medical expert also testified that he could not independently quantify which products or pieces of equipment specifically caused Mr. Lopez's disease. Abraham Dep. 65:15–22, Feb. 12, 2020. However, Mr. Lopez and his co-worker, Mr. Buchanan, both testified about repairing and replacing gaskets on Fisher valves using putty knives, scrapers, wire brushes, and electric wheels, in a fashion that created dusty conditions which affected their breathing and got on their clothes. Specifically, Mr. Lopez recalled removing gasket material from valve flanges with a putty knife before cleaning the surface with a buffing wheel or wire brush, a process he described as "pretty dusty." Lopez Dep. 77:7–14, Aug. 16, 2017. Mr. Lewis testified that working on these valves was a "dusty" process that involved removing gasket material from the valve flanges and using a chisel, putty knife, buffing wheel and/or wire brush to remove the gasket and clean the surface. Lewis Dep. 22:13–25:04, 48:24–50:05, 57:17–59:23, 60:04–18. Mr. Buchanan echoed Mr. Lopez's testimony about the dusty conditions created by the removal of gaskets from valves. R. Doc. 504 at 4.

After reviewing this testimony and the relevant scientific literature, Mr. Ewing opined that this activity would likely produce exposures in the range of 0.05 f/cc to 1.0 f/cc, or above-background levels. He explained that his opinions were based on "packaging and gasket exposures, not about what brand of valve might have been on one side of a flange or not," and that he relied on eyewitness testimony of product identification witnesses because he had no independent knowledge of the products at Mr. Lopez's worksite. Ewing Dep. 119:20–120:18; 120:25; 123:4–9. Dr. Abraham relied on Mr. Ewing's report and testified that the above-background level exposures experienced by Mr. Lopez while working on gaskets and valves was a substantial cause

13

of his mesothelioma. Abraham Dep., 64:24–67:14. This evidence, viewed in the light most favorable to Plaintiffs, is sufficient to indicate that a genuine question of material fact exists with respect to whether Mr. Lopez's exposure to asbestos attributable to Fisher was a substantial contributing cause of his mesothelioma.

### C. Duty

Fisher also contends Plaintiffs' claims must fail because it cannot be held liable for dangers caused by products it did not itself manufacture or distribute. Under Louisiana law, a manufacturer has a duty "to warn the consumer of any dangerous propensities which may foreseeably accompany normal use of the product." *Ducote v. Liberty Mut. Ins. Co.*, 451 So. 2d 1211, 1213 (La. Ct. App. 1984). This duty "is governed by the standard of knowledge available to the manufacturer/professional vendor at the time." *Toups v. Sears, Roebuck & Co.*, 507 So. 2d 809, 818 (La. 1987). Nevertheless, Louisiana courts have typically refused to impose liability on a defendant for a product it did not itself produce. *See, e.g.*, *Landry v. E. A. Caldwell, Inc.*, 280 So. 2d 231, 235 (La. Ct. App. 1973) (holding that a scooter manufacturer could not be liable for injuries caused by a throttle mechanism because the throttle "was not the one manufactured by movant. It was a completely foreign device."); *Newman v. Gen. Motors Corp.*, 524 So. 2d 207, 209 (La. Ct. App. 1988) (holding that an automobile manufacturer could not be liable for injuries caused by an allegedly defective ratchet because the defendant neither manufactured nor installed the device); *Andry v. Canada Dry Corp., Div. of Norton Simon*, 355 So. 2d 639, 641 (La. Ct. App. 1978) (concluding that the manufacturer of a glass soda bottle was not liable for injuries caused when the bottle cap, which was manufactured by a different company, forcefully released from the bottle and injured plaintiff's eye).

Based on the foregoing, Fisher contends it cannot be held liable for damage caused by products it did not manufacture or supply, such as flange gaskets or packing material. R. Doc. 456 at 12. In contrast, Plaintiffs argue Fisher had an affirmative duty to warn because it sold the valves with asbestos-containing components, the valves required the incorporation of these parts, the removal and replacement of these parts was foreseeable, and Fisher itself sold asbestos-containing replacement parts. R. Doc. 506 at 16.

As an initial matter, the Court recognizes that the parties apparently disagree about which component parts Mr. Lopez may have been exposed to. Plaintiffs appears to suggest that Mr. Lopez was exposed to internal asbestos-containing valve components, which Fisher incorporated into the valves at the time of sale. Fisher disagrees and points to a total lack of evidence that Mr. Lopez ever opened a valve and manipulated or otherwise worked on internal valve components. The Court has reviewed the deposition testimony provided by both sides and agrees that there is no evidence that Mr. Lopez was ever exposed to asbestos from internal valve components. *See* Buchanan Dep. 225:2-24 (confirming that he had no knowledge that Mr. Lopez ever worked on internal valve components). In contrast, Mr. Lopez and his coworkers testified about the removal and manipulation of flange gaskets located wherever a valve was connected to a pipe. Lopez. Dep. Vol I 76:22–24; Buchanan Dep. 30:19–32:19; 34:14–16; 34:22–37:1. Accordingly, Fisher's liability hinges on whether it had a duty to warn users of the dangers associated with these flange gaskets. Fisher's corporate representative, Ronald Duimstra, prepared an affidavit specifically noting that Fisher valve never required asbestos-containing flange gaskets to operate as intended and that Fisher never sold or otherwise distributed asbestos-containing flange gaskets. Duimstra Aff. ¶ 2 (R. Doc. 456-1 at 352).

15

The United States Supreme Court has recently commented on this issue. In *Air & Liquid Sys. Corp. v. DeVries*, the Supreme Court considered whether a manufacturer has a duty to warn users when the product it manufactures will later require the integration of a dangerous product in order to function as intended. 139 S. Ct. 986, 203 L. Ed. 2d 373 (2019). Specifically, *DeVries* involved the liability of a heavy equipment manufacturer who delivered products to U.S. Navy ships that either incorporated asbestos-containing components manufactured by other companies at the time of sale or specified that asbestos-containing components were required for proper use. *Id*. at 992. Relying on basic tort-law principles, the Court concluded that there is no difference between a product that is itself inherently dangerous and one that requires the incorporation of a component the manufacturer knows will make it dangerous, in part because the manufacturer is in a better position to warn the user of the danger than the manufacturer of the component parts and because any additional burden on the manufacturer is minimal. *Id*. at 993. As the Court ultimately announced,

> [A] manufacturer does have a duty to warn when its product requires incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses. Under [this] approach, the manufacturer may be liable even when the manufacturer does not itself incorporate the required part into the product.

*Id*. at 994. The Court additionally concluded that this duty to warn is also applicable when a manufacturer directs a particular component part to be incorporated, makes a product with a component it knows will need to be replaced with a similar component in the future, or makes a product that would be useless without the specific component. *Id*. at 995–96.

Although *DeVries* applies specifically to maritime torts, *see id*. at 995, the Court finds it instructive here. *See Whelan v. Armstrong Int'l Inc.*, No. 081810, 2020 WL 2892232, at *15 (N.J. June 3, 2020), *as revised* (June 4, 2020) (examining and applying *DeVries* in a non-maritime

context); *but see Davis v. John Crane, Inc.*, 353 Ga. App. 243, 251, 836 S.E.2d 577, 584 (2019), *reconsideration denied* (Nov. 15, 2019) (declining to adopt *DeVries* outside of the maritime context); *see also Coffman v. Armstrong Int'l, Inc.*, No. E201700062COAR3CV, 2019 WL 3287067, at *20 (Tenn. Ct. App. July 22, 2019), *appeal granted* (Feb. 20, 2020) (considering *DeVries* and determining that a duty to warn existed where the "degree of foreseeable harm and the gravity of potential harm outweighed the burden that the equipment defendants would have suffered by warning about the post-sale integration of asbestos-containing . . . flange gaskets"). In particular, both *DeVries* and the instant matter involve the duty of an equipment manufacturer whose products are later used in conjunction with asbestos-containing components, the manipulation of which allegedly caused the respective plaintiffs to develop asbestos-related cancers.

Although the question of whether a duty exists is a question of law, the Court concludes that summary judgment is inappropriate at this juncture because the duty inquiry requires the resolution of certain factual issues, such as whether Fisher valves *required* the incorporation of asbestos-containing gaskets, or whether the incorporation of such gaskets was merely *foreseeable*. On one hand, Fisher's corporate representative prepared an affidavit explaining that although some Fisher products used flange gaskets to "provide an internal seal between metal parts," the valves did not require the incorporation of gaskets to function as intended. He further noted that if flange gaskets were ever used, they were "selected and installed by a third party without the recommendation or advice of Fisher." Duimstra Aff. ¶ 7 (R. Doc. 456-1 at 352).

On the other hand, however, Mr. Buchanan and Mr. Lewis both testified about the routine use of flange gaskets with Fisher valves. Specifically, Mr. Buchanan testified that asbestos-containing gaskets were used every time a valve was connected to a pipe. Buchanan Dep. 23:15–

23. A gasket, he explained, is used to "keep the material in . . . the pipe." *Id*. at 23:15–16. He continued, "you can't just put metal to metal. You got to have something in there to keep the – the product in the pipe." *Id*. at 23:27–20. Mr. Lewis corroborated this testimony, explaining that a gasket was located at every location where a pipe connected to a valve because without a gasket, a leak will occur at the valve/pipe meeting point. Lewis Dep. 22:13 –23:2. As he explained, "anywhere these pumps or valves are connected to piping, there's a gasket." *Id*. at 24:23-25:4. Mr. Lewis further testified that the gaskets were routinely replaced every three or four years and that replacing a gasket was required every time a valve was to be reused. *Id*. at 50:1–6; 61:22–62:2. Considering the purpose of a valve and the fact that a valve must be connected to a pipe in order to function properly without the risk of leaks, this testimony clearly raises at least a genuine question about whether the gaskets were required for the valves to be used as intended. Further, although Fisher's counsel at oral argument noted that the valves could be used with either asbestos-containing or asbestos-free gaskets, and that this choice was at the discretion of Brown and Root, this was attorney argument and not presented in a form admissible under Rule 56(c). Accordingly, the Court concludes that certain factual issues, such as whether the use of asbestos-containing flange gaskets in conjunction with Fisher valves was required, or merely foreseeable, need to be resolved before the issue of duty can be conclusively decided. Therefore, summary judgment is not appropriate.

IV. **CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Defendant Fisher's Motion for Summary Judgment, R. Doc. 456, is **DENIED**.

New Orleans, Louisiana this 13th day of July, 2020.

_____
Eldon E. Fallon
United States District Court